## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

EMILIO D. "MIKE" SANCHEZ,

        Plaintiff,

vs.                                          No. CIV 03-0297 JB/LFG

EUGENE MATTA, EDSON WAY,
ED LUJAN, and GENE HENLEY,

        Defendants.

## MEMORANDUM OPINION

**THIS MATTER** comes before the Court on: (i) the Defendants' Motion for Protective Order, filed February 13, 2004 (Doc. 42); and (ii) the Plaintiff's Motion to Compel Production of Responsive Documents and Materials, filed February 26, 2004 (Doc. 48). The primary issue is whether the Court should issue a protective order concerning the Plaintiff's "Notice of Deposition Subpoena Duces Tecum" to Robert Casey at Robert Caswell Investigations, or issue an order compelling Casey to comply with the Notice. Because the Court finds that the Plaintiff's motion to compel is not properly before the Court, it will deny the Plaintiff's motion. Because the Court further finds that portions of the materials created during Casey's investigation are privileged, and that potential deposition questions may intrude into privileged areas, it will grant the Defendants' motion for protective order in part and deny it in part.[1]

## FACTUAL BACKGROUND

This action involves Sanchez' claim of retaliation. He contends that he revealed misconduct

---

[1] The Court has previously entered an Order denying the Plaintiff's Motion to Compel and granting in part and denying in part the Defendants' Motion for Protective Order. See Order, filed April 7, 2004 (Doc. 61). This opinion is intended to explain more fully the Court's reasoning for its previous Order.

in connection with the National Hispanic Cultural Center (the "Center") for which the Defendants later retaliated against him. Specifically, in December 1999, he raised concerns involving fraud, mismanagement, and hostile work environment. In July 2000, seven months after he raised his concerns, Center officials issued Sanchez a notice of contemplated dismissal. Sanchez filed his complaint in this matter approximately three years later. See Complaint for Violation of First Amendment and 14th Amendment Equal Protection Rights, filed March 10, 2003 (Doc. 1)("Complaint").

In late December 1999, Lois Mee, the human resources manager of the Office of Cultural Affairs ("OCA"), contacted Marcia E. Lubar, the attorney for Defendants Edson Way, Ed Lujan, and Gene Henley (the "Defendants").[2] The OCA retained Lubar to investigate and review Sanchez' allegations and to provide legal advice concerning the allegations. See Affidavit of Marcia E. Lubar ¶ 2, at 1 (executed February 11, 2004). Lubar asserts that Mee, Way, and Lubar intended their communications to be confidential and made them solely for the purpose of obtaining legal advice and assistance. See id. ¶ 3, at 1.

After reviewing the information that Mee and Way initially provided to her, Lubar contacted Robert Caswell Investigations ("RCI") because there was a concern that litigation might ensue. See id. ¶¶ 4, 9, at 2. Lubar intended her communications with RCI to be confidential. See id. ¶ 5, at 2. Lubar assigned RCI investigators the task of investigating Sanchez' allegations. See id. ¶ 6, at 2. Robert Casey and Sherry Riordan from RCI met with Lubar and, on behalf of Lubar, conducted interviews, collected documents, and otherwise investigated Sanchez' allegations. See id. ¶ 8, at 2. This investigation was a component of rendering professional legal services to the Center. See id.

_____

[2] The Center is a division of the OCA.

The Center does not normally conduct such an investigation in connection with its business. The Center conducted the investigation only because it anticipated litigation. See id. ¶ 9, at 2. Casey has no information or independent knowledge of any facts related to this matter other than information he obtained pursuant to the investigation conducted at Lubar's request. See Affidavit of Robert Casey ¶¶ 7-8, at 2 (executed February 11, 2004).

## **PROCEDURAL BACKGROUND**

Sanchez filed his Complaint on March 10, 2003. The Complaint alleged violations of the First Amendment and the Fourteenth Amendment's Equal Protection clause. Specifically, he alleges violations of his right to free speech in retaliation for having raised concerns of fraud, mismanagement, and a hostile work environment. To prove his claims, Sanchez must present evidence establishing that the Defendants' allegedly retaliatory treatment of him was motivated by his voicing concerns protected by the First Amendment. See Butler v. City of Prairie Village, 172 F.3d 736, 745-46 (10th Cir. 1999).

In their initial disclosures, which were hand-delivered to Sanchez on May 9, 2003, the Defendants identified and asserted attorney-client/work-product privilege for the RCI investigation and resulting report. On January 13, 2004, Sanchez served a "Notice of Deposition Subpoena Duces Tecum" to Robert Casey at RCI requesting that he bring the investigative report and other related materials resulting from his January 2000 investigation. Specifically, Sanchez has requested that Casey produce: (i) all notes, tape recordings, e-mails, or other documents related to the January 2000 investigation conducted at the Hispanic Cultural Center involving Eugene Matta; and (ii) the investigative report issued. Sanchez asserts that he is seeking to discover information during Casey's deposition which is necessary to prove his claims of retaliatory firing for raising concerns about fraud,

-3-

mismanagement, and hostile work environment.

Sanchez originally noticed Casey's deposition for February 17, 2004.  Because Casey participated in an investigation into matters relating to this action on Lubar's behalf, the Defendants have advised Sanchez' counsel that the deposition questioning is likely to draw objections because Casey's only knowledge pertaining to the information Sanchez seeks consists of attorney work-product and privileged attorney-client communications.  The Defendants have further advised Sanchez' attorney that the documents and items that Sanchez seeks are all attorney work-product, having been prepared in anticipation of litigation.

Counsel have been unable to resolve these issues.  Both Sanchez and the Defendants have attempted, and have made a good faith effort, to confer and to resolve this matter without Court intervention, but these attempts have been unsuccessful.  The parties have been reasonable in their efforts to compromise and to work to resolve this matter before filing their motions.

 The Defendants filed their Motion for Protective Order on February 13, 2004, seeking to protect Casey from being questioned about, or having to produce, privileged matters or materials. Because of the possibility that Sanchez' counsel will seek, purposefully or inadvertently, to invade the attorney-client privilege and the work-product privilege, the Defendants seek a protective order in advance of the deposition.  Specifically, the Defendants seek to preclude any questions that would require Casey to reveal conversations with Lubar or confidential communications from Lubar's client. The Defendants also seek, on the same basis, to preclude the production of documents sought along with the deposition.

Sanchez filed his response to the motion for protective order and included with his response a motion to compel the production of Casey's documents.  Sanchez moves the Court, pursuant to

rules 37(a) and 45(c)(2)(B) of the Federal Rules of Civil Procedure, for an order compelling Casey to produce items that Sanchez requests in the Notice of Deposition Subpoena Duces Tecum. Alternatively, Sanchez requests the Court to order an *in camera* inspection of the tangible things for which the Defendants seek a protective order.

## LAW GOVERNING THE WORK-PRODUCT PRIVILEGE

Rule 26(b)(1) allows parties to obtain discovery on any matter that is not privileged and is at least reasonably calculated to lead to the discovery of admissible evidence.  The federal courts have held that the scope of discovery should be broadly and liberally construed to achieve full disclosure of all potentially relevant information.  The Supreme Court has stated that the discovery rules "are to be accorded a broad and liberal treatment," and "either party may compel the other to disgorge whatever facts he has in his possession."  Hickman v. Taylor, 329 U.S. 495, 507 (1947).   Privileged matters, however, are not subject to rule 26's broad discovery requirements.  See id. at 508. Nevertheless, "[a] party seeking to assert the privilege must make a clear showing that it applies." Peat, Marwick, Mitchell & Co. v. West, 748 F.2d 540, 542 (10th Cir. 1984).  "The applicability of the privilege turns on the adequacy and timeliness of the showing as well as on the nature of the document."  Id.

The Supreme Court of the United States has recognized the principle that work-product materials enjoy a qualified protection from discovery.  See Hickman v. Taylor, 329 U.S. at 510.  Rule 26(b)(3) incorporates that principle to the extent that it concerns documents and tangible things:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under . . . this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the

> preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.   In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed. R. Civ. P. 26(b)(3).  The attorney work-product privilege is based on the recognition that "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel."  Hickman v. Taylor, 329 U.S. at 510.  As such, "the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."  Citizens Progressive Alliance v. United States Bureau of Indian Affairs, 241 F. Supp. 2d 1342, 1358 (D.N.M. 2002)(Smith, Magistrate J.)(citing United States v. Nobles, 422 U.S. 225, 238 (1975)).

The work-product privilege includes not only the attorney's product, but also the product of the attorney's agent.  See United States v. Nobles, 422 U.S. at 238-39 ("[T]he doctrine protect[s] material prepared by agents for the attorney as well as those prepared by the attorney himself."); Alexander v. F.B.I., 192 F.R.D. 12, 18 (D.D.C. 2000)("The caselaw dealing with attorneys' investigators shows that they should generally be afforded the same protection as the attorneys for whom they work.").

For the work-product doctrine to apply, the party asserting the privilege has the burden of proving that the documents or materials were prepared in anticipation of litigation by or for a party or that party's representative.  See Fed. R. Civ. P. 26(b)(3).  Litigation need not necessarily be imminent as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation.  "There is no requirement that the litigation have already commenced in order for the work-product doctrine to be operative, however, there must be more than a remote

possibility of litigation." Fox v. California Sierra Financial Services, 120 F.R.D. 520, 524 (N.D. Cal. 1988)(citations omitted).

"Intangible" work-product is also protected from discovery. The test under rule 26 is that an assertion of intangible work-product privilege is viable when, in light of the nature of the intangible work-product and the particular case's factual situation, the information can fairly be said to have been prepared or obtained because of the prospect of litigation. See Alexander v. F.B.I., 192 F.R.D. at 17 (citing Senate of Puerto Rico v. United States Dep't of Justice, 823 F.2d 574, 587 n. 42 (D.C. Cir. 1987)). This aspect of the work-product privilege also protects the mental processes, mental impressions, personal beliefs, and the litigation strategies of an attorney and his or her agents. See Hickman v. Taylor, 329 U.S. at 511.

Thus, questions that would solicit privileged information if asked directly of a party's attorney seek privileged information when asked of the attorney's investigator. See Alexander v. F.B.I., 192 F.R.D. at 18. However, "[b]ecause the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within work product." Resolution Trust Corp. v. Dabney, 73 F.3d at 266 (citing Feldman v. Pioneer Petroleum, Inc., 87 F.R.D. 86, 89 (W.D. Okla. 1980)).

If the party asserting the privilege bears its burden of proof with respect to establishing its entitlement to the privilege, rule 26(b)(3) allows production of attorney work-product materials "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3).

## LAW GOVERNING THE ATTORNEY-CLIENT PRIVILEGE

"The lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." Trammel v. United States, 445 U.S. 40, 51 (1980).  The privilege's purpose is "to encourage clients to make full disclosure to their attorneys." Fisher v. United States, 425 U.S. 391, 403 (1976). The party seeking to assert the attorney-client privilege has the burden of establishing its applicability. See Motley v. Marathon Oil Co., 71 F.3d 1547, 1550 (10th Cir. 1995).

The attorney-client privilege is a narrow one and was not intended to be a catch-all exception to a process of broad and liberal discovery. See Westinghouse Elec. Corp. v. Republic of Philippines, 951 F.2d 1414, 1423-24 (3d Cir. 1991)("The privilege 'protects *only* those disclosures -- necessary to obtain informed legal advice -- which might not have been made absent the privilege.'")(quoting Fisher v. United States, 425 U.S. at 403)(emphasis added by Westinghouse court).  "[I]f all activities of a lawyer are classified as warranting the bar of discovery proceedings because of the attorney-client privilege, then it would be appropriate for clients to retain lawyers as investigators, custodians of records and the like, thereby turning the shield of the privilege into the sword of injustice." Payton v. New Jersey Turnpike Authority, 691 A.2d 321, 334 (N.J. 1997)(quoting Metalsalts Corp. v. Weiss, 184 A.2d 435, 440 (N.J. Ch.Div. 1962)).

On the other hand, the Supreme Court of the United States has upheld the privilege in the context of attorney investigations.  See Upjohn v. United States, 449 U.S. 383, 394 (1981).  In Upjohn v. United States, attorneys questioned employees regarding matters within the scope of their duties about possible illegal payments.  These communications had significant legal implications. Protecting the communications with the privilege did not put the legal adversary in Upjohn in a worse

position than if the communications had never taken place. See id. at 395. The adversary could still discover the facts regarding the illegal payments. "[T]he protection of the privilege extends only to communications and not to facts." Id. at 395 (quoting Philadelphia v. Westinghouse Electric Corp., 205 F. Supp. 830, 831 (E.D. Pa. 1962)).

The New Jersey Supreme Court dealt with a similar situation regarding an investigation in Payton v. New Jersey Turnpike Authority, rejecting the defendant's assertion that the entire investigatory process was privileged because attorneys, that the defendant employed, participated in the investigation. Instead, the court remanded the issue to the trial court for an *in camera* inspection:

> The key issue regarding applicability of the privilege in this case is the purpose of the various  components of the investigation that defendant initiated into plaintiff's allegations of sexual harassment. If the purpose was to provide legal advice or to prepare for litigation, then the privilege applies. However, if the purpose was simply to enforce defendant's antiharassment policy or to comply with its legal duty to investigate and to remedy the allegations, then the privilege does not apply.

Payton v. New Jersey Turnpike Authority, 691 A.2d at 334.

If the party asserting the attorney-client privilege meets its burden of establishing the existence of the privilege, the burden shifts to the opposing party to establish that some exception to the privilege is present, such as waiver. See, e.g., Perkins v. Gregg County, 891 F. Supp. 361, 363 (E.D. Tex. 1995).

## LEGAL ANALYSIS

The Defendants have met their burden of proof in establishing the existence of the attorney-client and work-product privileges. Thus, the rules require Sanchez to make the rule 26(b)(3) showing of substantial need for work-product material or establish that a waiver to the attorney-client privilege applies; he has not done so. Sanchez has not made the requisite showing that he is entitled

to invade either of those privileges.  The Court will therefore grant the Defendants' motion in part.

Because, however, it is possible to produce some of the requested documents without divulging

counsel's mental impressions and legal strategies, the Court will deny the Defendants' motion in part

and order the production of redacted documents from the investigative file.  Because the Court finds

that the Plaintiff's motion is not properly before it, the Court will deny the Plaintiff's motion to

compel.

## I.   SANCHEZ' MOTION TO COMPEL IS NOT PROPERLY BEFORE THE COURT.

The Defendants argue that Sanchez does not properly present his motion and that it is

redundant.  Sanchez has joined his response to the Defendants' motion for protective order with a

motion to compel.  The Defendants argue that this procedure does not meet the requirements of the

federal or local rules, and makes it difficult for the Defendants to fully respond to Sanchez' motion.

The Federal Rules of Civil Procedure and the District Court's local rules require that a motion

be written and state its basis with particularity.  See Fed. R. Civ. P. 7(b)(1); D.N.M. LR-CV 7.1(a).

Sanchez' motion is unnecessary because it is redundant of what the parties present in the Defendants'

motion for protective order.  If the Court denies the Defendants' motion for protective order, the

discovery goes on, as Sanchez requests.  There is no need to file a motion to compel the same

discovery that is the subject of a motion for protective order.

Further, Sanchez' motion is untimely.  Sanchez is trying to use Casey to obtain a document,

the RCI investigative report, which the Defendants objected to producing in their answer to Sanchez'

Request for Production No. 7.  The Defendants served their responses to Sanchez' First Request for

Production of Documents on January 23, 2004.  Sanchez had, pursuant to local rule 26.6, 20 days

from the service of the responses to file a motion to compel.  See D.N.M. LR-CV 26.6.  Failure to

proceed in the allotted time frame constitutes an acceptance of the objection.  Sanchez did not follow

the 20 day rule, and the rules thus preclude Sanchez from obtaining the investigative report.

There is another reason that the Court will deny the motion to compel as to the deposition.

Sanchez has not deposed Casey.  The proper procedure was to depose Casey and, when and if he

refused to answer specific questions, then file the motion to compel.

For the reasons stated, the Court finds that the Plaintiff's motion is not properly before the

Court.  It seeks the same relief at issue in the Defendants' motion for protective order.  It is outside

the time frame allowed for a motion to compel following an objection to discovery.  Moreover, the

motion to compel is premature with respect to Casey's deposition.  Accordingly, the Court will deny

Sanchez' motion to compel.

## II.   THE WORK-PRODUCT PRIVILEGE PRECLUDES DISCOVERY OF THE DOCUMENTS IN THE INVESTIGATION FILE AND PRECLUDES QUESTIONING CASEY ABOUT THE INVESTIGATORY PROCESS.

The work-product doctrine protects the items that Sanchez requests.  The evidence in the

record shows that Casey conducted the investigation in anticipation of litigation.  Production of the

documents sought in the accompanying subpoena duces tecum would improperly invade attorney

work-product.  Because, however, the work-product privilege does not protect underlying facts, and

it is possible to redact the documents in the investigation file to protect attorney impressions and legal

strategies, the Court will order the Defendants to produce those documents in redacted form.  The

Court will not require the Defendants to produce the investigative report itself.

A.    THE WORK-PRODUCT PRIVILEGE BARS PRODUCTION OF TANGIBLE THINGS AND DOCUMENTS, INCLUDING THE INVESTIGATIVE REPORT, RESULTING FROM THE INVESTIGATION.

1.    **Casey Prepared the Investigative Report in Anticipation of Litigation.**

Sanchez contends that, at the time he raised his concerns in December 1999, the possibility of litigation was too remote to protect the investigative report by the work-product doctrine. Sanchez argues that the work-product doctrine should not be used to shield disclosure of the investigative report and other tangible things that he requests.

The time lapse between the investigation and Sanchez' filing of the lawsuit is not relevant to the question whether Lubar and Casey prepared the materials in anticipation of litigation. That the investigation occurred more than three years prior to Sanchez' lawsuit does not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. If the time-line that Sanchez supplies points in any direction, it demonstrates that documents resulting from the Caswell investigation were prepared in anticipation of litigation.

Casey's affidavit establishes that he created the documents and things that Sanchez seeks as Lubar's agent and in anticipation of litigation against the Defendants. These are the categories of work-product -- tangible things created in anticipation of litigation by a party's attorney or agent -- that Rule 26(b)(3) protects. See, e.g., United States v. Davis, 131 F.R.D. at 398 (observing that either the attorney-client privilege or the work-product doctrine protects all investigative materials resulting from an investigation undertaken on behalf of an attorney in connection with the rendering of legal services for a client). Furthermore, these documents and items would tend to reveal the investigator's mental processes while he was acting as the attorney's agent. This fact gives the items

-12-

special protection from disclosure.  See Upjohn Co. v. United States, 499 U.S. at 400-401 (noting that the attorney work-product privilege protects attorney's notes and memoranda based on witness statements because they would tend to reveal the attorney's mental processes); Fed. R. Civ. P. 26(b)(3).

The legal authorities that the parties supply support that the report and the materials Casey gathered are work-product.  The Court concludes that the work-product doctrine covers the materials sought.  Because the Defendants' counsel has agreed to produce redacted versions of the documents in the investigation file, however, the Court will order the production of copies that do not include any mental impressions or strategies of the attorney and her investigator.  See Transcript of Motion Hearing at 10:6-11; id. at 11:9-18 (March 24, 2004).[3]  Because the investigative report itself is no longer in Casey's possession, but in defense counsel's possession, the Court will not order the Defendants to produce the report in any form.

## 2.    Sanchez Has Not Demonstrated a Substantial Need for the Items Requested or that He is Unable to Obtain Them by Other Means.

Sanchez does not vigorously dispute that the materials which he seeks are not protected by the work-product doctrine.  Rather, he contends that, if the Court finds that the work-product covers the investigative report, contemporaneous witness testimony contained within the investigative report meets the "substantial need" exception to the doctrine that Rule 26(b)(3) contemplates.  Sanchez argues that the items were created over four years ago.  The length of time that has passed has clouded witness recall of events and issues that Sanchez raised in December 1999.  See Deposition of Edward Lujan at 33:19-39:16 (taken February 9, 2004).

---

[3] The Court's citations to the transcript refer to the Court Reporter's original, unedited version.  Any finalized transcript may contain slightly different page and/or line numbers.

> It has been repeatedly recognized that a witness's memory long after the events in question is not nearly as reliable as his recollection at or near the time of the event, and this advantage of contemporaneous statements by itself can constitute sufficient justification for disclosure of such statements. . . . Furthermore, a contemporaneous statement may be the only means of determining whether the witness is altering his version of facts.

Rexford v. Olczak, 176 F.R.D. 90, 93 (W.D.N.Y. 1997)(quoting Carolan v. New York Telephone Co., 1984 WL 368 at *4 (S.D.N.Y. 1984)).

Sanchez contends that the best records that exist are the investigative report and other items produced pursuant to the January 2000 investigation.  Sanchez states that he needs access to the information that provides contemporaneous statements of witnesses for impeachment purposes and to fill in the gaps in the memories of witnesses four years after the incident.

Additionally, Sanchez argues that allowing the Defendants to protect the investigative report from disclosure, when it was drafted in close temporal proximity with Sanchez' allegations of wrongdoing, would permit the Defendants the sole benefit of relying on facts not otherwise obtainable through normal discovery means.  "If permitted to do so, [a party] could divulge whatever information is favorable to its position and assert the privilege to preclude disclosure of the detrimental facts.  The resulting half-truth that would be revealed might well be more disabling than a total distortion."  Payton v. New Jersey Turnpike Authority, 691 A.2d at 335 (quoting United Jersey Bank v. Wolosoff, 483 A.2d 821, 828 (N.J. App. Div. 1984))(brackets in original).  Sanchez contends that allowing the Defendants alone to have access to information that all parties have a substantial need to discover is inherently inequitable.

The Court will not compel production of the investigative report.  With respect to the items and documents in the investigative file, however, the Court will require defense counsel to review the

-14-

documents and redact all mental impressions and legal strategies. After appropriately redacting the documents, the Defendants should produce those documents to Sanchez.

### B. THE WORK-PRODUCT DOCTRINE PROTECTS THE INVESTIGATION PROCESS, INCLUDING THE CONDUCT OF ANY INTERVIEWS OR ANY RESULTING IMPRESSIONS OR BELIEFS.

Consistent with the principles set forth in Taylor v. Hickman, Sanchez may properly ask some limited questions of Casey, such as the identity of persons interviewed. It is likely, however, that Sanchez will pose questions that will seek information that the attorney work-product doctrine protects. The documents and items that Sanchez requests Casey to bring to the deposition show this likelihood, as well as the fact that counsel were unable to work out in advance areas of acceptable questions.

Any questions that would reveal information tending to directly or indirectly show Lubar's thoughts, opinions, or strategies would be improper, as the attorney work-product privilege protects that information. See Alexander v. F.B.I., 192 F.R.D. at 18; Upjohn v. United States, 499 U.S. at 400-401 (noting that attorney memoranda regarding witness statements are protected by attorney work-product privilege, because they would tend to reveal the attorney's mental processes). Questions asking for the content of the questions posed to interviewees, for the organization of those questions, for follow-up questions posed, for follow-up information obtained after any interviews, for the investigator's beliefs as to the witness' veracity, for the importance of the witness' statement, or for similar questions would be improper as a violation of the privilege. See Alexander v. F.B.I., 192 F.R.D. at 19 (noting that attorney work-product privilege may protect information beyond the names of interviewees where the information would tend to reveal the thoughts, opinions, and strategies of the other party's attorneys and their investigators).

The Defendants have shown their entitlement to a protective order to protect attorney work-product. The Court will grant the Defendants' motion. The Court will also instruct Sanchez' counsel to limit questioning of Casey to those areas that will not intrude on the Defendants' work-product privilege.

### C.   THE COURT WILL NOT ORDER AN *IN CAMERA* INSPECTION AT THIS TIME.

Alternatively, Sanchez asks the Court to order an *in camera* inspection to discern whether the investigative report and other tangible items contain the attorney's strategies and legal impressions, or underlying facts regarding Sanchez' complaints raised in December 1999. Sanchez contends that, other than the Defendants' assertions in their Motion for Protective Order, neither Sanchez nor the Court can discern whether the investigative report is a collection of fact-gathering results or a transcript of attorney mental impressions. It is unclear whether the investigative report directly or indirectly reveals Lubar's mental impressions or legal theories.

The Court concludes that it is able to determine that Casey produced the investigative report in anticipation of litigation and that the substantial need exception has not been met. Accordingly, the Court will not conduct an *in camera* inspection of the items that Sanchez requests to determine whether the items requested reveal Lubar's mental processes or whether they contain only a recitation of facts regarding Sanchez' voicing his concerns of fraud and mismanagement.

### III.   THE ATTORNEY-CLIENT PRIVILEGE PROTECTS FROM DISCLOSURE ALL CONVERSATIONS BETWEEN AND AMONG LUBAR, CASEY, AND RIORDAN, AND ANY INTERVIEWS OF THE NATIONAL HISPANIC CULTURAL CENTER EMPLOYEES.

The attorney-client privilege protects several categories of communications: (i) those between the OCA and/or the National Hispanic Cultural Center employees and their attorney, Lubar; (ii) those

between Center employees and Casey as Lubar's agent; and (iii) those between Lubar and Casey.

Sanchez argues that the attorney-client privilege does not shield the investigatory process merely because the Defendants used an attorney to comply with their obligations to investigate and remedy Sanchez' obligations. Relying on Upjohn Co. v. United States, the Defendants assert that the privilege protects some, if not most, of Casey's communications pursuant to his investigation because Lubar retained him to conduct an investigation into Sanchez' allegations of December 1999. Sanchez argues that the privilege protection in Upjohn is distinct because the communications between the Defendants' employees and Casey in this case were analogous to communications for the purpose of business decision-making or corporate strategy in responding to Sanchez' allegations of wrongdoing. As such, Sanchez maintains, the communications are facts that relate to the retaliation that Sanchez suffered, and Upjohn does not protect those facts.

Sanchez contends that the issue is whether the Defendants were investigating to provide legal advice or to prepare for litigation, or were complying with their legal duty to uncover facts underlying Sanchez' allegations in December 1999 of fraud, mismanagement, and hostile work environment. Sanchez, again relying heavily on the timing of the investigation, contends that the timing demonstrates the Defendants were complying with their obligation to respond to Sanchez' allegations and that, therefore, the privilege, despite the use of an attorney to conduct the investigation, is inapplicable. Sanchez again urges that the Court should resolve any question that the Court has regarding the purpose of the communications in December 1999 and January 2000 by an *in camera* inspection.

Lubar's affidavit establishes that the communications between Lubar and the OCA employees and/or the National Hispanic Cultural Center employees are attorney-client communications, and thus

-17-

the attorney-client privilege protects them from disclosure.  See Lubar Aff. ¶ 3, at 1.  All communications were made to Lubar by a client in connection with the rendering of professional legal services.  See id.  The persons made the communications confidentially for the purpose of obtaining legal services.  See id.  The client has not waived the privilege.  See Sprague v. Thorn Americas, Inc., 129 F.3d 1355, 1371 (10th Cir. 1997).

The communications between employees of the OCA and the Center, and Casey, are also privileged attorney-client communications.  As Lubar's affidavit establishes, employees made those communications to Casey, an agent of their employer's counsel.  See Lubar Aff. ¶ 11, at 2.  They were made at their employer's direction to secure legal advice.  See id.  The people involved made the communications in a confidential manner.  See id.  The communications have remained confidential since the people involved made them.  See Upjohn v. United States, 499 U.S. at 394 (finding that attorney-client privilege protected communications that employees made to counsel for employer who was acting as attorney at the direction of corporate superiors to secure legal advice and were maintained as confidential).

The attorney-client privilege that existed between Lubar and the OCA and/or the National Hispanic Cultural Center extends to communications between Lubar and Caswell Investigations.  See Alexander v. F.B.I., 192 F.R.D. at 16 (citing Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp., 5 F.3d 1508, 1514 (D.C. Cir. 1993)); United States v. Kovel, 296 F.2d 918, 922 (2d Cir. 1961)(stating that communications with agents are protected if they are "made in confidence for the purpose of obtaining legal advice from the lawyer").  Accordingly, any questions that Sanchez might ask of Casey at his deposition, which would require him to reveal the substance of any conversations between himself and Lubar, or the substance of any conversations between

Lubar and her client, would inquire into areas that the attorney-client privilege protects.  Casey need not answer such questions, and the Court will so order.

The Defendants and the Court cannot anticipate in advance whether and what objectionable questions Sanchez might ask.  Given, however, the nature of the production request accompanying Casey's deposition notice, the Court anticipates that some, if not most, questions that Sanchez may ask will invade the attorney-client privilege if answered.  For example, Sanchez might ask Casey about particular things Lubar asked him to look for during his investigation, whether Lubar specifically directed him to interview certain persons, and what questions Lubar instructed him to ask.  Each of these areas of questioning would be improper.  The Defendants' counsel may then interpose an objection to any question that invades privileged communications.

Sanchez' questioning of Casey may improperly invade the attorney-client and work-product privileges.  Under this case's circumstances, the attorney-client privilege protects most, if not all, communications between Lubar and Caswell Investigations.  Sanchez has not made a showing of waiver or some other exception to the attorney-client privilege.  Because of this privilege, the Court will grant the Defendants' motion in part and order Sanchez to avoid asking deposition questions that would invade the attorney-client privilege.

## IV.   THE DEFENDANTS' FAILURE TO PRODUCE A PRIVILEGE LOG EARLIER DOES NOT WAIVE THEIR RIGHT TO ASSERT THE PRIVILEGE.

In their Initial Disclosures, the Defendants asserted that the investigative report was subject to the attorney work-product privilege.  Until Sanchez filed his motion arguing that the Defendants had waived any privileges by not producing a privilege log, the Defendants had not produced a privilege log, as Rule 26(b)(5) requires, regarding the communications that they reference in their

-19-

motion for protective order.  Sanchez contends that, without a privilege log, he is unable to assess the applicability of the privilege and that the Court should not allow the Defendants to stand behind the shield of the privilege.  See Employer's Reinsurance Corp. v. Clarendon National Insurance Co., 213 F.R.D. 422, 428 (D. Kan. 2003)(O'Hara, Magistrate J.)(noting "the well-established law in this district that failure to produce a privilege log can result in a waiver of any protection afforded those documents . . . .").  Sanchez argues that the absence of a privilege log further demonstrates the necessity of an *in camera* inspection to discern which communications will actually meet the Upjohn standards.

Although the Defendants may not have produced the privilege log as early as they could have, the Court does not believe that is a reason to deny the application of the privilege.  The privilege log the Defendants prepared is sufficiently detailed to allow the parties and the Court to discuss the documents at issue.  Accordingly, the Court will not deny the motion for protective order on the ground that the Defendants did not produce a timely privilege log.

_____
UNITED STATES DISTRICT JUDGE

-20-

Counsel:

Angela B. Cornell
George Bach
Peifer & Cornell
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Kevin G. Brown
Brown & German
Albuquerque, New Mexico

    *Attorney for Defendant Eugene Matta*

Marcia E. Lubar
Beall & Biehler
Albuquerque, New Mexico

    *Attorney for Defendants Edson Way,*
     *Ed Lujan, and Gene Henley*