# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

EMILIO D. "MIKE" SANCHEZ,

        Plaintiff,

vs.                                     No. CIV 03-0297 JB/LFG

EUGENE MATTA and EDSON WAY,

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on (i) Plaintiff's Motion for Attorneys' Fees and Expenses, filed October 18, 2004 (Doc. 145); (ii) Plaintiff's Motion for Review of Clerk's Orders Settling Costs, filed December 10, 2004 (Doc. 172); (iii) Defendant Matta's Motion for Review of Clerk's Order Settling Costs for Plaintiff, filed December 14, 2004 (Doc. 173); and (iv) Defendant Way's Motion for Review of Clerk's Orders Setting Costs, filed December 15, 2004 (Doc. 175). The primary issues are: (i) whether the Plaintiff Emilio D. "Mike" Sanchez' nominal damage award is a technical or de minimus award such that the only reasonable fee award is none; (ii) whether Defendants Eugene Matta's and Edson Way's offer of judgment precludes a full award of fees and expenses; and (iii) the amount of reasonable fees and expenses that the Court should award Sanchez. Because the Court concludes that the Sanchez' nominal damage award is not technical or de minimus, and because the Defendants' offer of judgment precludes Sanchez' post-offer fees, expenses, and costs, the Court will award $41.467.02 in fees, expenses, and costs. The Court will deny in part and grant in part the parties' motions for review of the clerk's orders settling costs. The Court will vacate (i) Clerk's Order Settling Costs for Plaintiff, filed December 8, 2004 (Doc. 168); (ii) Clerk's Order

Settling Costs for Plaintiff, filed December 8, 2004 (Doc. 169); and (iii) Clerk's Order Settling Costs

for Plaintiff, filed December 8, 2004 (Doc. 170) and settle costs as stated herein.

## **PROCEDURAL BACKGROUND**

Sanchez brought this action pursuant to 42 U.S.C. § 1983.  Sanchez' Complaint originally

sought damages for violations of his First Amendment and Equal Protection rights.  Sanchez  later

dismissed the Equal Protection claim.  Thus, at the time of trial, Sanchez alleged that Matta and Way

violated his federally protected First Amendment right.

Specifically, Sanchez contended that the Defendants retaliated against him for his exercise of

protected speech.  As damages, Sanchez sought lost wages, retirement benefits, other employment

benefits, damages for humiliation, and pain, mental anguish, suffering, and punitive damages.  See

Complaint ¶ A, at 22.  At trial, Sanchez sought over $200,000.00 in compensatory damages and an

unspecified amount of punitive damages.

The Defendants denied Sanchez' claims.  The Defendants contested Sanchez' lawsuit, and the

parties engaged in substantial factual development and legal efforts.  Sanchez had to withstand

motions for summary judgment that the Defendants filed separately to obtain the verdict of liability

in his favor against both Defendants at trial.

Pursuant to rule 68 of the Federal Rules of Civil Procedure, the Defendants, on February 26,

2004, served by mail an offer of judgment in the amount of $50,000.00.  Sanchez did not accept the

Defendants' offer of judgment, and the case proceeded to trial.

After a four-day jury trial, the Court instructed the jury to consider emotional distress

damages, "increased mileage and time lost," nominal damages, and punitive damages.  See Courts

Final Jury Instructions, filed October 5, 2004 (Doc. 136).  Sanchez prevailed on his claim of First

Amendment retaliation. The jury awarded him compensatory damages in the amount of $1.00 and found against Sanchez on the issue of punitive damages. See Verdict, filed October 5, 2004 (Doc. 137). The Court entered a judgment on the jury verdict on October 8, 2004 in favor of Sanchez and against the Defendants on his federal constitutional claim of First Amendment retaliation. See Final Judgment, filed October 8, 2004 (Doc. 138)

Sanchez moves the Court to enter an order awarding reasonable and necessary attorneys' fees and expenses, applicable New Mexico gross receipts tax thereon, and post-judgment interest incurred to date in the successful prosecution of the case to judgment. Sanchez' counsel, Pfeifer & Cornell, L.L.P., filed supporting affidavits with Sanchez' motion. Sanchez' motion and his Bill of Costs seek recovery of certain costs, which he contends are also allowable as statutory costs under 28 U.S.C. § 1920.

Based on Sanchez' counsel's affidavits, Sanchez seeks the following attorneys' fees and expenses, plus applicable New Mexico gross receipts tax, for his counsel's work in this matter to date. The numbers include a forty-percent reduction in fees from July 15, 2004 through October 1, 2004. Based on the partial success that Sanchez obtained, as evidenced by the jury's nominal damages award, Sanchez and his counsel have reduced by forty percent their requested fee, after July 15, 2004, the date of the Court's first Order (Doc. 85) ruling on the motions for summary judgment, and through the date of the jury verdict on October 1, 2004. Sanchez has not similarly reduced by forty percent his request for fees for work in the district court following the jury verdict in this case.

**Pfeifer & Cornell, L.L.P.:**

K. Lee Peifer               .3          @$250.00/hr          $       75.00

| | | | | |
|---|---|---|---|---|
| Angela Cornell | 340.68 | @$200.00/hr | | $ 68,136.00 |
| George Bach | 252.32 | @$160.00/hr | | $ 40,371.20 |
| Justin Lesky | 1.8 | @$175.00/hr | $ | 315.00 |
| Paralegal | 27.54 | @$ 75.00/hr | | $ 2,065.50 |
| Law Clerk | 63.81 | @$ 75.00/hr | | $ 4,785.75 |

$115,748.45

GROSS RECEIPTS TAX          $   7,017.25

**TOTAL FEES with GRT**          **$122,765.70**

<u>Costs and Expenses:</u>

    a.    Deposition Transcription Costs

| | |
|---|---|
| Judy Candelaria Vol. 1 | $ 339.75 |
| Judy Candaleria Vol. 2 | $ 187.50 |
| Gene Henley | $ 440.70 |
| Ed Lujan | $ 304.25 |
| Danny Lopez | $ 452.25 |
| Reeve Love | $ 345.50 |
| Reeve Love Vol. 2 | $ 161.25 |
| Helen Lucero | $ 463.75 |
| Eugene Matta | $ 737.00 |
| Emilio D. "Mike" Sanchez | $ 524.00 |
| Carlos Vazquez | $ 406.75 |
| Edson Way | $ 404.00 |

    b.    Deposition Witness Fees

| | |
|---|---|
| Judy Candelaria | |
|     Per diemn | $   40.00 |
|     Mileage | $     5.11 |
| Eugene Matta | |
|     Airline Travel | $ 201.40 |

    c.    Trial Transcript Fees    $ 467.50
           (Testimony of Chavez and Lucero)

    d.    Jury Questionnaire Fees    $   20.00

    e.    Trial Exhibit Copy Costs    $1,298.18

f.      Trial Witness Fees

Raymond Chavez
Per diem                    $ 40.00
Mileage                     $  8.25
Andrew Connors
Per diem                    $ 40.00
Mileage                     $  3.00
Danny Lopez
Per diem                    $ 40.00
Mileage                     $  3.00
Reeve Love
Per diem                    $ 40.00
Mileage                     $  3.00
Helen Lucero
Per diem                    $ 40.00
Mileage                     $  3.00
Paulina Miller
Per diem                    $ 40.00
Mileage                     $  3.00
Grace Saavedra
Per diem                    $ 40.00
Mileage                     $ 18.00
David Sanchez
Per diem                    $ 40.00
Mileage                     $  3.00

g.      Service of Process-Dave True
(Lopez, Lucero, Love, Candelaria,
Saavedra, Chavez, Sanchez, Connors,
Miller, Horwitz)                    $ 220.00

h.      Parking                     $   1.00

i.      Meal                        $   6.84

j.      Cindi L. Pearlman, P.C.     $ 1,568.00
(Draft jury instructions)

k.      Faxes (264 @ $1.00)         $   264.00

l.      Postage                     $    45.85

[See Exhibit 2A attached hereto]

| | | | |
|---|---|---|---|
| m. | Copies | $ 902.46 | |
| n. | Long Distance Phone Calls | $ 1.80 | |

| | |
|---|---|
| SUBTOTAL | **$10,173.09** |
| GROSS RECEIPTS TAX | $ 613.96 |
| **COST AND EXPENSE TOTAL** | **$10,787.05** |

**Peifer & Cornell, L.L.P. Total**                                  **$133,552.75**

**Law Office of Jane Gagne**

| | | | |
|---|---|---|---|
| Attorney fees | 3.0 | @ $160.00/hr | $ 480.00 |
| Gross Receipts Tax | | | $ 27.90 |

Gagne Total                                                  **$     507.90**

**Steven K. Sanders & Associates, L.L.C.**

| | |
|---|---|
| Steven K. Sanders | $ 755.50 |
| Donald Sears | $ 1,288.80 |
| Paralegal Judith Bishow | $ 476.80 |
| Costs | $ 749.75 |

Sanders Total                                                **$  3,270.00**

**Filing Fee**          **$    150.00**

**TOTAL REQUESTED ATTORNEYS' FEES AND
   EXPENSES, INCLUDING GRT:**                        **$ 137,481.50**

The Defendants oppose this motion.

## LAW REGARDING § 1988

42 U.S.C. § 1983 and its fee-shifting subsection § 1988 seek to encourage attorneys to litigate civil rights violations, including violations of a plaintiff's First Amendment rights. Section 1988(b) provides: "[T]he court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. "[T]here are two elements in deciding whether to award attorney's fees. First, the party seeking fees must qualify as a 'prevailing party.' Second, the fee itself must be 'reasonable.'" Phelps v. Hamilton, 120 F.3d 1126, 1129 (10th Cir. 1997)(quoting 42 U.S.C. § 1988(b)).

In numerous cases, the United States Court of Appeals for the Tenth Circuit has affirmed that the court may determine a plaintiff who recovers a nominal damages award to be a prevailing party entitled to an award of attorneys' fees. See, e.g., Nephew v. City of Aurora, 830 F.2d 1547, 1550-51 (10th Cir. 1987)(en banc). In Nephew v. City of Aurora, the jury awarded the plaintiffs nominal damages of $1.00. The Tenth Circuit, sitting en banc, concluded: "Because the district court found that the most important aspect of the judgment was the vindication of plaintiffs' civil rights and its message to the police department, we cannot conclude that the trial court's award [of attorneys' fees] was an abuse of discretion." Id.

In Farrar v. Hobby, 506 U.S. 103 (1992), the Supreme Court of the United States held that "a plaintiff who wins nominal damages is a prevailing party under § 1988." Id. at 112. See, e.g., Koopman v. Water District No. 1, 41 F.3d 1417, 1420 (10th Cir. 1994)("It is clear that under Farrar v. Hobby, [the plaintiff] is a prevailing party because he was awarded nominal damages.").

Once a court determines that a party is a prevailing party, it must then determine what amount

of reasonable attorney's fees should be awarded.  See Phelps v. Hamilton, 120 F.3d at 1130.

"Although the 'technical' nature of a nominal damages award or any other judgment does not affect

the prevailing party inquiry, it does bear on the propriety of fees awarded under Section 1988."

Farrar v. Hobby, 506 U.S. at 114.  "[I]n some circumstances, even a plaintiff who formally 'prevails'

under § 1988 should receive no attorney's fees at all."  Id. at 115.  The most critical factor in

determining the reasonableness of an attorneys' fees award is the degree of success obtained.  See

id.  In a civil rights action for compensatory and punitive damages, awarding only nominal damages

highlights the plaintiff's failure to prove actual injury or any basis for awarding punitive damages.  See

id. at 115.  "When a plaintiff recovers only nominal damages because of his failure to prove an

essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all."  Id.

In Farrar v. Hobby, the jury found that the defendant, Hobby, deprived Farrar of a civil right.

The United States Court of Appeals for the Fifth Circuit affirmed but determined that Farrar was

entitled only to nominal damages against Hobby.  See id. at 107.  The Supreme Court held that the

district court abused its discretion by granting Farrar attorney's fees based on his "technical" victory.

Id. at 114.  According to the Supreme Court: "Th[e] litigation accomplished little beyond giving

petitioners the 'moral satisfaction of knowing that a federal court concluded that [their] rights had

been violated' in some unspecified way."  Id. (citation omitted).

Thus, a technical vindication of one's constitutional rights alone is not enough to justify an award of

attorney's fees under § 1988.

In her concurring opinion, Justice O'Connor indicated that, "[w]hen the plaintiff's success is

purely technical or de minimus, no fees can be awarded.  Such a plaintiff either has failed to achieve

victory at all, or has obtained only a Pyrrhic victory for which the reasonable fee is zero."  Id. at 117

(O'Connor, J., concurring).   Justice O'Connor "established a three-part analysis 'to determine whether a prevailing party achieved enough success to be entitled to an award of attorney's fees.'" Brandau v. Kansas, 168 F.3d 1179, 1181 (10th Cir. 1999)(citations omitted)(quoting Phelps v. Hamilton, 120 F.3d at 1131)(adopting Justice O'Connor's framework)). "This framework requires the district court to determine the 'relevant indicia of success' by examining: (1) the difference between the judgment recovered and the judgment sought; (2) 'the significance of the legal issue on which the plaintiff prevailed'; and (3) 'the public purpose served' by the litigation."   Id. (quoting Farrar v. Hobby, 506 U.S. at 121-22 (O'Connor, J., concurring)).   See Phelps v. Hamilton, 120 F.3d at 1131.

After Farrar v. Hobby, the Tenth Circuit cases have continued to award attorney's fees to plaintiff's recovering only nominal damages.   See, e.g., Brandau v. Kansas, 168 F.3d at 1183 ("[W]hat is controlling [in determining entitlement to a fee award] is Plaintiff's vindication of her civil rights and of important rights of co-workers, even if she sought only a modest amount of damages."); Koopman v. Water Dist. No. 1, 41 F.3d 1417, 1421 (10th Cir. 1994)(reversing denial of attorneys' fees where plaintiff awarded $1.00 nominal damages); Phelps v. Hamilton, 120 F.3d at 1131 ("The general rule under § 1988 is that the prevailing party 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'") (quoting Blanchard v. Bergeron, 489 U.S. 87, 89 n.1 (1989)).   Indeed this Court could not locate any decisions in which the Tenth Circuit has reversed a district court for awarding fees when there was an award of nominal damages. Moreover, the Tenth Circuit has not affirmed an order denying fees.   Finally, the Tenth Circuit has reversed orders denying any fees.

In Phelps v. Hamilton, the Tenth Circuit reversed a district court's decision to deny attorneys'

fees.  In that case, the plaintiffs were prosecuted for violations of state picketing statutes.  The plaintiffs challenged the statutes' constitutionality and sought an injunction.  The plaintiffs succeeded on one of their four claims.  The district court, relying on <u>Farrar v. Hobby</u>, denied the plaintiffs' motion for attorneys' fees.  The Tenth Circuit, however, concluded: "[W]e disagree with the district court's ruling that the present cases fits within that narrow category of cases where no attorney's fees should be awarded.  The general rule under § 1988 is that the prevailing party should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." <u>Phelps v. Hamilton</u>, 120 F.3d at 1131 (quotations omitted).  The Tenth Circuit considered Congress' intent, stating: "In view of this clearly expressed congressional intent, our circuit has recognized that the 'district court's discretion to deny fees to a prevailing party is quite narrow.'" <u>Id.</u> The Tenth Circuit applied Justice O'Connor's three factors and concluded that the plaintiff's nominal damage award was not technical or de minimus.  <u>See id.</u> at 1132-33.

In <u>Brandau v. Kansas</u>, the Tenth Circuit affirmed a district court's fee award to a plaintiff who won only nominal damages.  168 F.3d at 1183.  In that case, both the district court and the Tenth Circuit found that the plaintiff's victory was not merely technical or de minimus.  The Tenth Circuit reiterated that courts should apply the so-called, three-part "O'Connor" analysis to determine whether a prevailing party has achieved enough success to be entitled to an award of fees.  <u>Id.</u> at 1181-82 (citing <u>Phelps v. Hamilton</u>, 120 F.3d at 1131).  Applying the second factor, the Tenth Circuit found that the plaintiff had prevailed on her primary claim.  <u>See id.</u>  Applying the third fact, the Tenth Circuit discussed the trial court's finding that the judgment served a larger public purpose, namely the prevention of sexual harassment in Kansas and Wyandotte County.  <u>See id.</u> at 1182-83 (noting that the plaintiff vindicated her civil rights and important rights of co-workers, and put state and

county on notice that it should reform its sexual harassment policies).  The Tenth Circuit concluded that the district court's award was proper because the verdict vindicated the plaintiff's civil rights. See Brandau v. Kansas, 168 F.3d at 1182.

Similarly, in Koopman v. Water District No. 1, the Tenth Circuit reversed the district court's decision to deny attorneys' fees.  41 F.3d at 1421.  The Tenth Circuit applied the Farrar v. Hobby analysis, id. at 1421, stating: "[I]t is usually appropriate to deny fees when only nominal damages are awarded."  Id. at 1420.  But the Tenth Circuit distinguished Koopman's case from that of Farrar's on the ground that Farrar's case benefitted only Farrar.  The Tenth Circuit reminded that, as always, "'the most critical factor' in determining the reasonableness of a fee award 'is degree of success obtained.'"  41 F.3d at 1420 (citing Farrar v. Hobby, 506 U.S. at 119)(citation omitted).  Koopman's victory, "in sharp contrast to Farrar's, had significant implications in establishing basic rights for public employees holding a similar property interest."  Id. at 1421.  "Although it is true that Koopman received only a nominal award, the present and future employees of the District [benefitted] by having their rights affirmed."  Id.  The Tenth Circuit concluded that, under Farrar v. Hobby, Koopman was not entitled to full attorneys' fees, but remanded the case for a determination on an appropriate award.  See id.

In Barber v. T.D. Williamson, 254 F.3d 1223 (10th Cir. 2001), the Tenth Circuit clarified the second and third factors.  The second factor -- "the significance of the legal issue on which the plaintiff claims to have prevailed" -- is similar to the first factor.  Id. at 1230 (citing Farrar v. Hobby, 506 U.S. at 121 (O'Connor, J., concurring)).  "'[T]he second factor . . . goes beyond the actual relief awarded [which is the focus of the first factor] to examine the *extent* to which the plaintiff[] succeeded on [his] theory of liability.'"  Barber v. T.D. Williamson, 254 F.3d at 1231 (quoting Phelps

-11-

v. Hamilton, 120 F.3d at 1132).

In Barber w. T.D. Williamson, the Tenth Circuit also discussed the differing responses by the circuit courts on how to apply the third factor – "the accomplishment of a public goal." 254 F.3d at 1231. Some courts read the factor restrictively, that is, deeming it satisfied only when the victory has served some broader public purpose. See id. at 1231-32. Others "have looked at the third factor in more generous terms, concluding that a public goal is accomplished if the plaintiff's victory encourages attorneys to represent civil rights litigants, afffirms an important right, puts defendants on notice that it needs to improve, and/or provokes a change in the defendant's conduct." Id. at 1232. The Tenth Circuit in Barber v. T.D. Williamson ultimately adopted a broader approach, but admonished that it should not be construed too liberally. See id. at 1233 (explaining that in Farrar v. Hobby, "no important right had been vindicated because it was not even clear what 'kind of lawless conduct . . . might be prevented'")(quoting Farrar v. Hobby, 506 U.S. at 122 (O'Connor, J., concurring)).

The cases in this circuit indicate that the prevailing party in civil rights litigation, even those winning only nominal damages, is generally entitled to attorney's fees and costs. As the Tenth Circuit explained in Robinson v. City of Edmond, 160 F.3d 1275 (10th Cir. 1998): "The implication of our cases is that when a plaintiff prevails in a civil rights suit, the plaintiff ordinarily should not have his vindication of these rights eviscerated by an obligation to pay his attorney's reasonable fees." Robinson v. City of Edmond, 160 F.3d at 1280.

The Supreme Court has admonished that a "request for attorneys' fees should not result in a second major litigation." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). Nevertheless, the United States Court of Appeals for the Tenth Circuit requires a sufficient factual record to support

a claim for attorneys' fees and expenses.  See Clay v. Unified Sch. Dist. No. 233, 157 F.3d 1243,

1256-57 (10th Cir. 1998).

## LAW REGARDING RULE 54

Rule 54(d) provides:

Except when express provision therefor is made either in a statute of the United
States or in these rules, costs other than attorneys' fees shall be allowed as of course
to the prevailing party unless the court otherwise directs; but costs against the United
States, its officers, and agencies shall be imposed only to the extent permitted by law.

Fed. R. Civ. P. 54.  "[I]t is well established that Rule 54 creates a presumption that the district court

will award costs to the prevailing party."  Cantrell v. Int'l Brotherhood of Elec. Workers, 69 F.3d

456, 458-59 (10th Cir. 1995).  "[A] party need not prevail on every issue to be considered a Rule

54(d) prevailing party."  Id. at 458.  The Tenth Circuit has stated, however, "that it is not an abuse

of discretion for a district court to refuse to award costs to a party that was only partially successful."

Id. at 459.

28 U.S.C. § 1920 sets out items that are taxable as costs under rule 54(d):

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript
necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the
case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and

salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.  A court is not required to award § 1920 costs under Rule 54.  <u>See</u> <u>Bee v. Greaves</u>, 910 F.2d 686, 690 (10th Cir. 1990).  A court, however, "has no discretion to award items as costs that are not set out in section 1920."  <u>Id.</u> (citing <u>Crawford Fitting Co. v. J.T. Gibbons, Inc.</u>, 482 U.S. 437, 441 (1987)).

## **ATTORNEYS' FEES**

Local rule 54.5 governs the application for award of attorneys' fees in the District of New Mexico.  Local rule 54.5 provides:

> **(a) Filing of Motion.** A motion for attorney's fees not brought pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d), must be filed and served within thirty (30) calendar days after entry of judgment. Failure to file and serve within this time constitutes waiver of a claim to attorney's fees.  Movant must submit a supporting brief and evidence (affidavits and time records). The motion must comply with D.N.M.LR-Civ. 7.

> **(b) Time Records.** An attorney must keep concurrent time records in 42 U.S.C. § 1983 cases and in other actions where there is a potential for an award of attorney fees.  Time records are kept by the attorney and are not filed until after final judgment unless otherwise ordered.

D.N.M.LR-Civ. 54.5.

In <u>Ramos v. Lamm</u>, 713 F.2d 546, 552 (10th Cir. 1983), <u>abrogated</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Pennsylvania v. Del. Valley Citizens' Council for Clean Air</u>, 483 U.S. 711 (1987), the Tenth Circuit explained that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation, multiplied by a reasonable hourly rate."  <u>See</u> <u>id.</u>  "The first step in calculating fee awards is to determine the number of hours reasonably spent by counsel for the party seeking the fees."  <u>Id.</u> at 553.  Attorneys seeking fees must keep "meticulous,

-14-

contemporaneous time records to present to the court upon request." Id.

Courts should "assess the possibility that reported hours include duplication." Id. at 554. "If the same task is performed by more than one lawyer, multiple compensation should be denied." Id. Although some situations, such as settlement conferences and trials, may require more than one lawyer, more than one lawyer must be justified to the court. See id. at 554 n.4. The court should not award fees when an attorney is present "for the purpose of being trained and who do not participate in or contribute to the proceedings." Id. Similarly, "[i]f the inexperience of counsel requires [an] unusually large number of hours, the adversary should not be required to pay more than the normal time the task should have required." Id. at 554 n.3.

"The first step in setting a rate of compensation for the hours reasonably expended is to determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." Id. at 555. Courts may consider "the quality of the a lawyer's performance in placing a value on his or her services." Id. If a plaintiff achieves less than complete success, courts may reduce fees, commensurate with "the degree of success obtained." Id. at 556 (quoting Hensley v. Eckerhart, 461 U.S. at 434-35).

"Items that are normally itemized and billed in addition to the hourly rate should be included in fee allowances in civil rights cases if reasonable in amount." Id. at 559. "Although some firms separately itemize and bill long distance telephone charges, copying costs, and some other expenses, these kinds of expenses should be allowed as fees only if such expenses are usually charged separately in the area." Id. Similarly, courts may award expenses for law clerk and paralegal services, if such services are not "already reflected in the normal area billing rate." Id. at 558-59. "[28 U.S.C.] § 1961 mandates interest on an award of attorneys' fees." Wheeler v. John Deere Co., 986 F.2d 413,

415 (10th Cir. 1993)(citing Transpower Constructors, a Div. of Harrison Int'l Corp. v. Grand River

Dam Auth., 905 F.2d 1413, 1423-24 (10th Cir. 1990).  "For items not reimbursable as attorney's fees

under § 1988, the general costs statute, 28 U.S.C. § 1920 is controlling."  Id. at 560.

## LAW ON OFFERS OF JUDGMENT

Rule 68 of the Federal Rules of Civil Procedure provides in pertinent part:

> At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued. . . .  If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.

Fed. R. Civ. P. 68.  "Under this scheme, the defendant can protect itself from costs associated with

protracted litigation by making a formal offer of judgment.  If the final judgment is less than the

settlement offer, the otherwise 'prevailing' plaintiff is precluded from recovering his post-offer costs."

Knight v. Snap-On Tools Corp., 3 F.3d 1398, 1404 (10th Cir. 1993).

In Marek v. Chesny, 473 U.S. 1 (1985), the Supreme Court considered  "whether the term

'costs' as used in Rule 68 includes attorney's fees awardable under 42 U.S.C. § 1988."  Id. at 4.  The

Supreme Court explained:

> [T]he most reasonable inference is that the term "costs" in Rule 68 was intended to refer to all costs properly awardable under the relevant substantive statute or other authority. In other words, all costs properly awardable in an action are to be considered within the scope of Rule 68 "costs". Thus, absent congressional expressions to the contrary, where the underlying statute defines "costs" to include attorney's fees, we are satisfied such fees are to be included as costs for purposes of Rule 68.

Id. at 9.  The Supreme Court held:

> Since Congress expressly included attorney's fees as "costs" available to a plaintiff in a § 1983 suit, such fees are subject to the cost-shifting provision of Rule 68. This

-16-

"plain meaning" interpretation of the interplay between Rule 68 and § 1988 is the only construction that gives meaning to each word in both Rule 68 and § 1988.

Id. See Sussman v. Patterson, 108 F.3d 1206, 1210 (10th Cir. 1997)( "The Rule 68 cutoff applied to both fees and costs in this § 1983 suit by operation of the substantive provisions of § 1988 and Rule 68." ).  Thus, pursuant to rule 68 and § 1988, "costs" include attorneys' fees and expenses.

## LAW ON SERVICE

Rule 5(a) of the Federal Rules of Civil Procedure provides in pertinent part:

Service: When required. Except as otherwise provided in these rules, every order required by its terms to be served, every pleading subsequent to the original complaint unless the court otherwise orders because of numerous defendants, every paper relating to discovery required to be served upon a party unless the court otherwise orders, every written motion other than one which may be heard ex parte, and every written notice, appearance, demand, **offer of judgment**, designation of record on appeal, and similar paper shall be served upon each of the parties.

Fed. R. Civ. P. 5(a)(emphasis added).  Rule 5(b) indicates: "Service under rule 5(a) is made by . . . [m]ailing a copy to the last known address of the person served."  Fed. R. Civ. P. 5(b)(2)(B). "Service by mail is complete on mailing."  Id.  See Theede v. U.S. Dep't of Labor, 172 F.3d 1262, 1266 (10th Cir. 1999)("Service by mail is accomplished, for purposes of Rule 5, when documents are placed in the hands of the United States Post Office or in a Post Office Box.").

## ANALYSIS

Section 1988 anticipated cases such as this one, which involve a public employee's right to speak out on matters of public concern.  The Court concludes that this case does not fall within the class of cases in which a prevailing plaintiff should not recover attorney's fees.  Sanchez' success was not technical or de minimus and therefore he is entitled to some reasonable attorney's fees.  Because, however,  Sanchez declined the Defendants' offer of judgment and then recovered less than the

-17-

amount the Defendants offered, the Court will not award post-offer costs.

I.     **AN AWARD OF REASONABLE FEES AND COSTS IS APPROPRIATE BECAUSE SANCHEZ' SUCCESS WAS NOT TECHNICAL OR DE MINIMIS.**

A.     **SANCHEZ IS THE PREVAILING PARTY.**

Matta concedes that Sanchez "was technically a prevailing party . . . ." Matta's Response at 1. Matta also concedes that Sanchez "technically established retaliation . . . ." The Judgment that the Court entered on October 8, 2004 thus rendered Sanchez a prevailing party for purposes of an award of attorneys' fees and expenses.

B.     **SANCHEZ' NOMINAL DAMAGE AWARD DOES NOT BAR AN AWARD OF FEES AND COSTS.**

Even though the Defendants concede that Sanchez is the prevailing party, they contend that Sanchez' one dollar verdict does not necessitate, nor does it justify, an award of fees or expenses. The Defendants argue that Sanchez did not establish a right to recover compensatory damages, an essential element of his retaliation claim, and did not establish reckless conduct justifying an award of punitive damages. They contend that, because Sanchez ultimately failed to prove an essential element of his claim, here actual injury, the prevailing view is that the only reasonable fee is no fee at all. See Farrar v. Hobby, 506 U.S. 103, 115 (1992).

The Court concludes that Justice O'Connor's factors do not indicate that this case is among the class of cases where fee awards are inappropriate. Sanchez "achieved enough success to be entitled to an award of attorney's fees.'" Brandau v. Kansas, 168 F.3d at 1181 (quoting Phelps v. Hamilton, 120 F.3d at 1131). Because in the Tenth Circuit, a plaintiff who prevails in a civil rights suit "ordinarily should not have his vindication of these rights eviscerated by an obligation to pay his attorney's reasonable fees," the Court will not deny Sanchez reasonable attorney's fees. Robinson

-18-

v. City of Edmond, 160 F.3d at 1280.

      **1.**     **The Difference Between the Judgment Recovered and the Judgment Sought.**

"The first and most critical factor in determining the reasonableness of a fee award is the degree of success obtained." Phelps v. Hamilton, 120 F.3d at 1132 (quotations omitted)(quoting Farrar v. Hobby, 506 U.S. at 114). "[A] substantial difference between the judgment recovered and the recovery sought suggests that the victory is in fact purely technical." Farrar v. Hobby, 506 U.S. at 121 (O'Connor, J., concurring). In Farrar v. Hobby, the plaintiff sought $17 million from six defendants and after ten years of litigation he recovered "one dollar from the least culpable defendant and nothing from the rest . . . ." Id. In this case, however, Sanchez sought damages for the Defendants' retaliatory conduct in violation of his First Amendment rights. He did not seek extravagant damages like the plaintiff sough in Farrar v. Hobby. See Brandau v. Kansas, 168 F.3d at 1182 (distinguishing case from Farrar v. Hobby because the claims for damages were not extravagant)(citing Koopman v. Water District No. 1, 41 F.3d at 1421.) Nor was litigation protracted like it was in Farrar v. Hobby, 506 U.S. at 116, so that litigation costs get high merely because of the passage of time. Sanchez filed his case on March 10, 2004; the case went to trial on September 27, 2004. See Brandau v. Kan., 168 F.3d at 1182. That Sanchez did not achieve all the relief he sought "does not diminish the reasonableness of awarding some attorney's fees commensurate with [his attorneys'] efforts in bringing [a successful] claim." Phelps v. Hamilton, 120 F.3d at 1132.

      **2.**     **The Significance of the Legal Issue On Which Sanchez Prevailed.**

The second consideration in determining reasonable attorney's fees is "the significance of the

legal issue on which the plaintiff claims to have prevailed." Farrar v. Hobby, 506 U.S. at 121 (O'Connor, J., concurring). See, e.g., Phelps v. Hamilton, 120 F.3d at 1131. This case involves the protection of First Amendment rights which have considerable importance in our constitutional scheme because they are essential to a proper working of our political and democratic branches of government. Moreover, in the Tenth Circuit, "the second factor . . . goes beyond the actual relief [which is the focus of the first factor] to examine the *extent* to which the plaintiff[] succeeded on [his] theory of liability." Barber v. T.D. Williamson, 254 F.3d at 1231 (quoting Phelps v. Hamilton, 120 F.3d at 1132). Sanchez' primary theory of liability in this case was that the Defendants violated his First Amendment rights. The jury concluded that both Defendants retaliated against Sanchez' in violation of his First Amendment Rights. Thus, although he received only nominal damages, Sanchez was successful on his primary theory of liability. This factor, therefore, does not indicate that Sanchez' success was technical or de minimis.

### 3.    Sanchez' Litigation Serves a Public Purpose.

The third consideration in determining reasonable attorney's fees is the public purpose the plaintiff's success serves. See Farrar v. Hobby, 506 U.S. at 121-22 (O'Connor, J., concurring). See, e.g., Phelps v. Hamilton, 120 F.3d at 1131. "This factor examines whether the judgment vindicates important rights and deters future lawless conduct as opposed to merely 'occupying the time and energy of counsel, court and client.'" Phelps v. Hamilton, 120 F.3d at 1132 (quoting Farrar v. Hobby, 506 U.S. at 121-22 (O'Connor, J., concurring)). Importantly, "the accomplishment of a public goal need not involve a benefit to the entire public." Barber v. T.D. Williamson, 254 F.3d at n.6.

This case involves the vindication of important rights: The jury concluded that the Defendants violated Sanchez' First Amendment rights. The jury's verdict, finding liability and awarding nominal

damages, will deter future wrongful conduct by these Defendants and may deter future wrongful conduct by others as well, especially within the National Hispanic Cultural Center.  The vindication of First Amendment rights is in the public interest.  The Court does not believe that this is case is within the class that the Supreme Court was attempting to deter attorney's from taking in <u>Farrar v. Hobby</u>.  The Court concludes that awarding some attorney's fees in this case will "ensure[] the vindication of important rights, even when large sums of money are not at stake."  <u>Farrar v. Hobby</u>, 506 U.S. at 122 (O'Connor, J., concurring).  <u>See</u> <u>also</u> <u>Barber v. T.D. Williamson</u>, 254 F.3d at 1233.

## II.   THE DEFENDANTS' OFFER OF JUDGMENT PRECLUDES AN AWARD OF POST-OFFER COSTS.

The Defendants argue that Sanchez is not entitled to recovery any post-offer fees or costs because the amount of fees and costs Sanchez incurred before the offer of judgment was less than the defendants' $50,000.00 offer of judgment.  Sanchez contends that the appropriate date for calculation of Sanchez' costs relevant to the offer of judgment is March 1, 2004, and, as of that date, his costs in this litigation amounted to more than $50,000.00.

Sanchez' identifies the following fees and costs as of March 1, 2004:

**Peifer & Cornell, L.L.P.:**

**Attorney Fees**

| | | | |
|---|---|---|---|
| K. Lee Peifer | .3 | @ $250.00/hr | $      75.00 |
| Angela Cornell | 143.8 | @ $200.00/hr | $ 28,760.00 |
| George Bach | 57.5 | @ $160.00/hr | $  9,200.00 |
| Paralegal | 17.9 | @ $ 75.00/hr | $  1,342.50 |
| Law Clerk | 3.5 | @ $ 75.00/hr | $     262.50 |

GRT on fees ($39,640.00 x 6.0625%)          $  2,403.18

**Expenses**

**a.**    **Deposition Transcription Costs**

| | | |
|---|---|---:|
| Judy Candelaria Vol. 1 | $ | 339.75 |
| Gene Henley | $ | 440.70 |
| Ed Lujan | $ | 304.25 |
| Danny Lopez | $ | 452.25 |
| Reeve Love Vol. 1 | $ | 345.50 |
| Helen Lucero | $ | 463.75 |
| Eugene Matta | $ | 737.00 |
| Carlos Vazquez | $ | 406.75 |
| Edson Way | $ | 404.00 |

**b.**    **Deposition Witness Fees**

Judy Candelaria

| | | |
|---|---|---:|
| Per diem | $ | 40.00 |
| Mileage | $ | 5.11 |

Eugene Matta

| | | |
|---|---|---:|
| Airline Travel | $ | 201.40 |

**c.**    **Faxes (143 @ $1.00)**      $    143.00

**d.**    **Postage**      $    26.29

**e.**    **Copies**      $    277.95

**f.**    **Long Distance Phone Calls**      $    1.80

GRT on: a, b, c, e, f ($4,563.12 x 6.0625%)      $    276.64

**Peifer & Cornell, L.L.P  Total**      **$ 46,909.32**

**Law Office of Jane Gagne**

**Attorney Fees**

| | | | | |
|---|---|---|---|---:|
| Jane Gagne | 3.0 | @ $160.00/hr | $ | 480.00 |
| Gross Receipts Tax | | | $ | 27.90 |

**Law Office of Jane Gagne Total**      **$   507.90**

**Steven K. Sanders & Associates, L.L.C.**

**Attorney Fees**

| | |
|---|---|
| Steven K. Sanders | $    755.50 |
| Donald Sears | $ 1,288.80 |
| Paralegal Judith Bishow | $    476.80 |

| | |
|---|---|
| **Expenses** | $    749.75 |

| | |
|---|---|
| **Steven K. Sanders & Associates, L.L.C. Total** | **$   3,270.00** |

| | |
|---|---|
| **TOTAL COSTS AS OF MARCH 1, 2004:** | **$ 50,688.07** |

### A.   FEBRUARY 26, 2004 IS THE APPROPRIATE DATE FOR CALCULATION OF SANCHEZ' PRE-OFFER COSTS.

Under rule 68, a defendant "may serve upon the adverse party" an offer of judgment.  Fed. R. Civ. P. 68.  "In cases involving Rule 68 offers, service of process must comply with Fed.R.Civ.P. 5(b)."  Magnuson v. Video Yesteryear, 85 F.3d 1424, 1429 (9th Cir. 1996).  Rule 5(a) indicates that every offer of judgment "shall be served upon each of the parties."  Fed. R. Civ. P. 5(a).  Under rule 5(b), service may by made by mailing the offer of judgment.  See Fed. R. Civ. P. 5(b)(2)(B).  "Service by mail is complete on mailing."  Id.  See Theede v. United States Dep't of Labor, 172 F.3d 1262, 1266 (10th Cir. 1999)("Service by mail is accomplished, for purposes of Rule 5, when documents are placed in the hands of the United States Post Office or in a Post Office Box.").

Sanchez does not contest that the "Defendants served by mail an offer of judgment in the amount of $50,000 on February 26, 2004."  Memorandum in Support of Plaintiff's Motion for Attorneys' Fees and Expenses, filed October 18, 2004 (Doc. 147).  He argues, however, that pursuant to rule 6(e), the date of receipt of the offer would have been February 29, 2004, which was a Sunday, and that therefore the appropriate date for calculation of Sanchez' costs relevant to the

offer of judgment is March 1, 2004.  Sanchez' reliance on rule 6(e), however, is misplaced.  Rule 6(e) provides:

> Additional Time After Service under Rule 5(b)(2)(B), (C), or (D).  Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon the party and the notice or paper is served upon the party under Rule 5(b)(2)(B), (C), or (D), 3 days shall be added to the prescribed period.

Fed. R. Civ. P. 6(e).  Rule 6(e) provides for the enlargement of periods of time in which an act is required or allowed to be done.  It does not, however, change the date on which service is complete.  Under rule 5(b)(2)(B),  "[s]ervice by mail is complete on mailing."

In this case, the Defendants served an offer of judgment by mail on February 26, 2004.  Service was complete on February 26, 2004.  Therefore, February 26, 2004 is the appropriate date for calculation of Sanchez' pre-judgment costs.

**B.      AS OF FEBRUARY 26, 2004, SANCHEZ' PRE-OFFER COSTS WERE LESS THAN THE DEFENDANTS' $50,000.00 OFFER OF JUDGMENT.**

The Defendants contend that Sanchez' calculation of pre-offer costs is not more than $50,000.00 because Sanchez' erroneously includes attorneys' fees incurred between February 27, 2004 and March 1, 2004.  The Court agrees with the Defendants that fees incurred between February 27, 2004 and March 1, 2004, should not be included in Sanchez' pre-offer costs.  When those costs are removed from Sanchez' $50,688.07 calculation, Sanchez' pre-offer costs are $46,074.47-- $3925.53 less than $50,000.00.

The invoices detailing Sanchez' attorneys' fees indicate that between February 27, 2004 and March 1, 2004, George Bach billed 26 hours: 2 hours on February 27, 2004; 1.5 hours on February 28, 2004; 12 hours on February 29, 2004; and 10.5 hours on March 1, 2004.  Sanchez indicates that

-24-

Bach's hourly rate is $160.00.  Thus, Bach's fees between February 27, 2004 and March 1, 2004, based on Sanchez' proposed rates, are $4160.00.[1]  Gross receipts tax on those fees is $252.20 ($4160.00 x 6.0625%).  Sanchez' invoices also indicate a $201.40 expense on March 1, 2004, for Eugene Matta's deposition travel costs.  In total, Sanchez' indicates that his fees and expenses between February 27, 2004 and March 1, 2004 are $4,613.60.  Thus, Sanchez' costs through February 26, 2004 are $46,074.47.  Because Sanchez' pre-offer costs are less than $50,000.00, the Defendants' offer of precludes an award of post-offer costs.

The Defendants also assert, for many reasons, that Sanchez' calculation of costs is not reasonable.  Relying on the documents and figures provided by Sanchez, however, the Court concludes that the pre-offer costs were less than $50,000.00.  The Court thus need not address the reasonableness of Sanchez' costs for purposes of determining whether pre-offer costs were less than $50,000.

## III.   SANCHEZ' COUNSEL REASONABLY AND NECESSARILY INCURRED $27,644.68 IN FEES, EXPENSES, AND COSTS.

### A.   ATTORNEYS' FEES

The Defendants argue that Sanchez' request for attorneys' fees is unreasonable.  The Defendants object to the number of hours Sanchez asserts his attorneys worked on his case and the rates Sanchez' attorneys charge.  Sanchez provides time records, invoices and affidavits by his counsel in support of his motion for fees and costs.

---

[1] Way contends that "plaintiff is relying on $2320.00 of attorneys' fees he incurred between February 27, 2004 and March 1, 2004."  Defendant Edson Way's Supplemental Response in Opposition to Plaintiff's Motion for Attorney's Fees and Expenses, filed November 12, 2004 (Doc. 159).  The Court could not determine how Way reached his $2320.00 calculation.  Upon review of the invoices the Court believes that $4160.00 is an accurate calculation of attorneys' fees incurred between February 27, 2004 and March 1, 2004.

1. **Expenditure of Counsel's Time Was Reasonable**.

    a. **Billing for Multiple Attorneys**.

The Defendants argue that the number of hours requested by Sanchez' counsel is unreasonable because multiple attorneys worked on Sanchez' case, when only one is necessary. Specifically, the defendants argue that Ms. Cornell and Mr. Bach excessively billed for discovery and deposition preparation, that Mr. Bach's involvement in the case was for training purposes, that Mr. Bach's presence at pre-trial hearings and trial was excessive, and that the time entries for paralegals and law clerks was duplicitous. The Court does not believe, however, that the fees Sanchez requests are duplicitous. The defense team in this case consisted of two attorneys. Likewise, Ms. Cornell and Mr. Bach worked together to represent Sanchez. The time records for Ms. Cornell and Mr. Bach appear to reasonably reflect the time necessary to adequately represent Sanchez. Similarly, the time records for law clerks and paralegals at the Pfeifer & Cornel law firm are not unreasonable.

The Defendants argue that fees for Steve K. Sanders & Associates are unreasonable because there is no proof regarding the qualification or skill of Mr. Sanders and his employees. Sanchez requests $3,270.85 in costs related to Mr. Sanders representation, $2,044.30 of which is attorneys' fees. Sanchez provided to the Court Ms. Cornell's affidavit indicating that Mr. Sanders rendered services on Sanchez' case and an invoice from Mr. Sanders detailing the time he spent on the case. Mr. Sanders has appeared before this Court and the Court has first hand experience with Mr. Sanders' qualification and skill. Mr. Sanders' fees and expenses appear reasonable. The Court will not disallow Mr. Sanders' fees and expenses.

The Defendants also object to fees for Jane Gagne. Sanchez requests $502.90 in fees for the services of Ms. Gagne. The Defendants assert that this fee is inappropriate because Ms. Gagne

-26-

declined to represent Sanchez and because there is no proof regarding the qualification or skill of Ms. Gagne.  The Court, however, does not believe that Ms. Gagne's decision to decline representation, alone,  is a barrier to recovery of her fees.  Sanchez still incurred these fees.  It is not clear why Ms. Gagne chose not to represent Sanchez.   It may be that, even though she did not take the case, she provided valuable advice about furthering the case.   In any case, the Court will not speculate. Sanchez provided to the Court Ms. Cornell's affidavit indicating that Ms Gagne rendered services on this case and an invoice from Ms. Gagne detailing the time she spent on the case.  Ms. Gagne has appeared before this Court and the Court has first hand experience with Ms. Gagne's qualification and skill.  She is one of the leading lawyers of the plaintiffs' bar.  The Court will not disallow Ms. Gagne's fees.  Ms. Gagne's fees and expenses appear reasonable.  The Court will not disallow Mr. Sanders' fees and expenses.

**b.      Billing for Non-Attorney Work**.

The Defendants assert that Sanchez' unreasonably requests attorneys' fees for non-attorney work. Way identifies a number of time entries that he believes involve non-attorney work.  All of these time entries, however, are for work performed after February 26, 2004.  Because the Court concludes that the Defendants' offer of judgment precludes an award of post-offer costs, the time entries Way identifies are excluded under Rule 68.

**c.      Vague Billing Entries**.

The Defendants argue that Sanchez' billing entries are vague and do not adequately specify the task performed.  Sanchez' counsels' affidavits and attachments itemizing all such reasonable costs and necessary costs provide an adequate basis for calculating Sanchez' total fee award, including expenses.  The Court will not disallow any fees because of vague billing entries.

2.    **Hourly Rates.**

The Defendants assert that Sanchez' counsel is not entitled to the hourly rate they request. The Court disagrees. Sanchez' counsel request reasonable hourly rates. They are based on prevailing market rates: "[W]hat lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." Ramos v. Lamm, 713 F.2d at 555.

Sanchez' counsel have established their particular experience entitling them to the hourly rates that they seek in their affidavits. See Cornell Aff. ¶¶ 10-18, at 2-4; Bach Aff. ¶¶ 7-12, at 2-3. The Court has firsthand knowledge of Sanchez' counsel's expertise, and the Court can consider that knowledge in placing a value on counsel's services. While Mr. Bach is a young lawyer, he is already recognized for his skill and expertise. The American Civil Liberties Union's local chapter recently hired Mr. Bach as its general counsel and only staff attorney. The Court was impressed with Mr. Bach's skill level. His rate of $160.00 is commensurate with lawyers of comparable skill.

The Court may also consider fee awards to plaintiffs in other cases as probative of the appropriate hourly rates to award in this case. The Court may further consider the affidavits of other attorneys regarding their understanding of the applicable market rates for plaintiffs' counsel based on their personal knowledge of the skill and experience of those lawyers. See Affidavit of Phillip B. Davis ¶¶ 15-20, at 5-6 (executed October 18, 2004); Affidavit of Maureen A. Sanders ¶¶ 7-9, at 3-4 (executed October 15, 2004). The Court can also draw on its own 20 years of litigation experience in the District, which familiarized it with a broad spectrum of the New Mexico bar and their rates, in complex civil cases generally and in civil rights cases specifically. Local market rates that attorneys of comparable skill and experience charge for complex federal litigation, established by the United States District Court's decisions as well as by the affidavits of the New Mexico attorneys that

Sanchez has submitted with his attorneys, are probative and support the rates to which Sanchez'

counsel are entitled.  See Blum v. Stenson, 465 U.S. 886, 895-86 n.11 (1984).

    **3.**    **Expenses**.

The Defendants argue that many of the expenses Sanchez requests are not recoverable.

Specifically, they assert that copy costs, fax costs, long distance costs and postage are not allowed

under 28 U.S.C. § 1920.  The defendants reference to § 1920 in relation to these items, however, is

misplaced.   All of the litigation expenses in civil rights cases, including out-of-pocket expenses, are

recoverable under § 1988, as long as the expenses were reasonable and necessary to the litigation of

Sanchez' claims and are "[i]tems that are normally itemized and billed in addition to the hourly rate."

Ramos v. Lamm, 713 F.2d at 559.  In the Court's experience, in this district, these items are normally

billed to clients in addition to an hourly rate.  These items are expenses that are properly included in

attorneys' fee requests.  The Court will not disallow reimbursement for copy costs, fax costs, long

distance costs or postage.

The Defendants also object to Sanchez' request for reimbursement of paralegal and law clerk

expenses.  They object to the number of paralegal and law clerk hours billed and the rates Sanchez'

requests for these hours.  The Court may award expenses for law clerk and paralegal services, if such

services are not "already reflected in the normal area billing rate." Ramos v. Lamm, 713 F.2d at 558-

59.  In the Court's experience, in this district, law clerk and paralegal services are normally billed to

clients in addition to an hourly rate.  These items are expenses that are properly included in attorneys'

fee requests.  The Court will not disallow reimbursement expenses for law clerk and paralegal

services.

    **B.**    **COSTS**.

-29-

The Defendants argue that many of the costs Sanchez' requests are not recoverable. Specifically, they challenge reimbursement of costs for the trial transcript, the deposition of Reeve Love, and the deposition of Judy Candelaria. Sanchez' itemization of  pre-offer costs does not include trial transcripts. The Court, thus, need not address whether they should be allowed.

 Section 1920  "authorizes recovery of costs with respect to all depositions reasonably necessary to the litigation of the case." Furr v. AT&T Tech., Inc., 824 F.2d 1537, 1550 (10th Cir. 1987) (quotation marks and citation omitted). The Court concludes that these depositions were reasonably necessary. The Court will not disallow reimbursement of costs for these depositions.

## C.    THE COURT WILL REDUCE SANCHEZ' ATTORNEYS' FEE REQUEST BY TEN PERCENT.

The Defendants assert that Sanchez' attorneys' fee request should be significantly reduced because a full recovery is not reasonable in relation to the success achieved by Sanchez. The Court agrees that a reduction is appropriate. A plaintiff who wins nominal damages, but fails to prove actual damages, "under *Farrar* is not entitled to full reimbursement for attorney's fees and costs." Koopman v. Water Dist. No. 1, 41 F.3d at 1421. Sanchez proposed a fee reduction of forty percent for fees and costs incurred between July 15, 2004, the date of the ruling on the motions for summary judgment, and October 1, 2004, the date of the jury verdict. Sanchez did not propose a fee reduction for his pre-offer fees and costs.

The Court agrees with the Defendants that the Court should reduce Sanchez' award to reflect his degree of success. The Court concludes that a ten percent reduction is appropriate in this case. Section 1988 seeks to encourage attorneys to ligate civil rights violations. In this case, Sanchez' counsel successfully vindicated important civil rights - namely, Sanchez' First Amendment rights.

-30-

The Court believes that a ten-percent reduction adequately reflects Sanchez' partial success.   The Court will therefore reduce Sanchez' pre-offer attorneys' fees, expenses, and costs by ten percent. The Court previously determined that Sanchez' pre-offer fees, expenses and costs were $46,074.47. Sanchez is thus entitled to $41,467.02.

**IT IS ORDERED** that Plaintiff's Motion for Attorney's Fees and Expenses is granted and the Plaintiff is awarded fees and expenses in the amount of $41.467.02, together with post-judgment interest. Plaintiff's Motion for Review of Clerk's Orders Settling Costs, Defendant Matta's Motion for Review of Clerk's Order Settling Costs for Plaintiff, and Defendant Way's Motion for Review of Clerk's Orders Setting Costs are granted in part and denied in part. Clerk's Order Settling Costs for Plaintiff (Doc. 168),Clerk's Order Settling Costs for Plaintiff (Doc. 169) and Clerk's Order Settling Costs for Plaintiff (Doc. 170) are vacated.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Angela Cornell
George Bach
Peifer & Cornell LLP
Albuquerque, New Mexico

  *Attorneys for the Plaintiff*

Kevin Brown
Brown & German, LLC
Albuquerque, New Mexico

  *Attorneys for the Defendant Eugene Matta*

Marcia Lubar

Beall & Biehler, An Association
Albuquerque, New Mexico

*Attorneys for the Defendant Edson Way*